**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


**BRIAN GOLZAK,**          :      **No. 3:12cv2247**
              **Plaintiff**     :
                              :      **(Judge Munley)**
       **v.**              :
**CAROLYN W. COLVIN,**[1]      :
              **Defendant**    :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Plaintiff Brian Golzak's (hereinafter

"plaintiff") appeal of the denial of supplemental security income benefits.

The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff filed an application for supplemental security income on

_____

[1]When plaintiff filed this action, Michael J. Astrue was the
Commissioner of Social Security.  Accordingly, plaintiff named him as the
defendant in his official capacity.  Since then, however, Astrue left his
position as Commissioner.   Carolyn W. Colvin became the Acting
Commissioner of Social Security on February 14, 2013. See OFFICIAL
SOCIAL SECURITY
WEBSITE,http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm
(last accessed Feb. 17, 2014).  Pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J.
Astrue as the defendant in this suit.  FED. R. CIV. P. 25(d) ("An action does
not abate when a public officer who is a party in an official capacity dies,
resigns, or otherwise ceases to hold office while the action is pending.  The
officer's successor is automatically substituted as a party.")

December 5, 2005.  (Doc. 4, Record (hereinafter "R") at 16).[2]  He alleges a

disability as of August 1, 2004.  (Id.)  He originally claimed disability based

upon anxiety, high cholesterol, a cardiac condition and an immune system

problem.  (Id. at 181-82).

An administrative law judge (hereinafter "ALJ") denied plaintiff's

application on July 24, 2007 after an administrative hearing.  (Id. at 43-53).

The Social Security Administration Appeals Council vacated the denial and

remanded for a de novo decision.  (Id. at 149-52).  The matter was

remanded for an analysis of plaintiff's obesity and an evaluation of the

opinion of psychologist Carl T. Sebastianelli, M.A.  (Id. at 150).

On January 4, 2011, a different ALJ, Ronald Sweeda, held a hearing.

He issued a decision finding plaintiff not disabled on April 21, 2011.  (Id. at

13-26).  Plaintiff now appeals that denial to this court.

Plaintiff was thirty-two years of age on the date his alleged disability

began.  (Id. at 191).  He has had a history of cardiovascular and

---

[2]Supplemental security income (hereinafter "SSI") is a federal income
supplement program funded by general tax revenues rather than being
funded by social security taxes.  42 U.S.C. § 1381.  It is designed to help
the aged, blind or disabled individuals who have little or no income.  42
U.S.C. § 1381.  Insured status is irrelevant in determining a claimant's
eligibility for supplemental security income benefits.  42 U.S.C. § 1382.

psychological ailments.  In school he completed the tenth grade, and he did not attend special education classes.  (Id. at 65, 186).   When the first hearing was held, plaintiff lived with his girlfriend of eleven years and their child and three children from his girlfriend's previous relationship.  (Id. at 64).  His girlfriend was pregnant at the time with their second child.  (Id.)

At the time of his second hearing, plaintiff was living with his mother. (Id. at 98).  The last job he had was in 2004, which he left due to heart problems.  (Id.)  He receives welfare and food stamps/Access card.  (Id.) Plaintiff can read and write and do simple math problems.  (Id. at 97).  He does not have a driver's license.  (Id.)  When, at his most recent hearing, plaintiff was asked to describe the reasons he could not work, he responded, "Like, everything.  My back, my legs, my chest.  I take nitro for angina.  I take-my arms are weak, everything.  I'm just-I can't focus.  I'm not . . . I'm not in good health."  (Id. at 98).

The ALJ analyzed the case pursuant to the appropriate five-step sequential analysis, which is described more fully below.  He found the plaintiff to be "not disabled."  The plaintiff challenges that decision with the instant appeal.

3

**Jurisdiction**

The court has federal question jurisdiction over this Social Security

Administration appeal.  <u>See</u> 42 U.S.C. § 1383(c)(3) ("The final

determination of the Commissioner of Social Security after a hearing under

paragraph (1) shall be subject to judicial review as provided in section

405(g) of this title to the same extent as the Commissioner's final

determinations under section 405 of this title."); <u>see</u> <u>also</u> 42 U.S.C. §

405(g)("Any individual, after any final decision of the Commissioner of

Social Security made after a hearing to which he was a party, irrespective

of the amount in controversy, may obtain a review of such decision by a

civil action commenced within sixty days after the mailing to him of notice

of such decision or within such further time as the Commissioner of Social

Security may allow.  Such action shall be brought in the district court of the

United States for the judicial district in which the plaintiff resides, or has his

principal place of business . . . .").

**Standard of Review**

In reviewing a Social Security appeal, this court must determine

whether "substantial evidence" supports the ALJ's decision.  <u>See</u>, 42

U.S.C. § 405(g); <u>Hagans v. Comm'r of Soc. Sec.</u>, 694 F.3d 287, 292 (3d

Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The

United States Supreme Court has defined "substantial evidence" as "such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620

(1966).  The Third Circuit Court of Appeals has explained that "substantial

evidence has been defined as 'more than a mere scintilla;' it means 'such

relevant evidence as a reasonable mind might accept as adequate.'"

Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely

because evidence may exist to support the opposite conclusion.  See 42

U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)

(stating that courts may not weigh the evidence or substitute its own

conclusion for those of the fact-finder);  Fargnoli v. Massanari, 247 F.3d

34, 38 (3d Cir. 2001)(indicating that when the ALJ's findings of fact are

supported by substantial evidence, courts are bound by those findings,

even if they would have decided the factual inquiry differently).  In an

adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of

drawing two inconsistent conclusions from the evidence does not prevent

an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at  429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).   The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir.1981).

**Discussion**

After a careful review of plaintiff's arguments, we find no merit to the instant appeal, and it will be denied.  To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial**

**gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates supplemental security income claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity;[3] (2) has an impairment, or combination of impairments, that is severe;[4] (3) has an impairment or combination of impairments that meets

_____

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510 and 416.910. If the claimant is engaging in "substantial gainful activity," the claimant is not disabled and the sequential evaluation proceeds no further.

[4] A "severe impairment" significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c).

or equals the requirements of a "listed impairment"; (4) has the "residual

functional capacity" to return to his or her past work; and (5) if not, whether

he or she can perform other work in the national economy.  20 C.F.R. §§

404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v).  Prior to addressing step

four, the ALJ must determine the claimant's residual functional capacity.[5]

20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  A plaintiff's residual

functional capacity is "the most [the plaintiff] can still do despite [his]

─────────────────

Basic physical work activities include the ability to walk, stand, sit, lift,
carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b).
An individual's basic mental or non-exertional abilities include the ability to
understand, carry out and remember simple instructions, and respond
appropriately to supervision, coworkers and work pressures.  20 C.F.R. §
1545(c).
       The determination of whether a claimant has any severe impairment
that has lasted or is expected to last for a continuous period of at least
twelve (12) months, at step two of the sequential evaluation process, is a
threshold test.  20 C.F.R. §§ 404.1509, 404.1520(c) and 416.920(c).  If a
claimant does not have any severe impairment or combination of
impairments which significantly limits his physical or mental abilities to
perform basic work activities that has lasted or is expected to last for a
continuous period of at least twelve (12) months, the claimant is "not
disabled" and the evaluation process ends at step two. Id.
       If a claimant has any severe impairments, the evaluation process
continues.  20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g).  Furthermore,
all medically determinable impairments, severe and non-severe, are
considered in the subsequent steps of the sequential evaluation process.
20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

       [5]  If the claimant has the residual functional capacity to do his or her
past relevant work, the claimant is not disabled.

8

limitations." 20 C.F.R. § 404.1545(a)(1).

In applying the five-step sequential analysis in the instant case, the ALJ found the following: 1) plaintiff has not engaged in substantial gainful activity since December 5, 2005; 2) plaintiff suffers from severe impairments of coronary artery disease, attention deficit hyperactivity and anxiety disorder; 3) the plaintiff's impairments do not meet or medically equal a listed impairment; 4) plaintiff cannot do past relevant work and 5) the plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (R. at 18-25).

Plaintiff's appeal raises the following four issues: 1) Are plaintiff's mental impairments as outlined prior to the first ALJ's hearing such that they are sufficient to render him disabled under listings 12.02, 12.06, 12.08?  2) Did plaintiff's second mental status examination confirm the severity of his condition and find him even more impaired so as to meet listings 12.02, 12.06 or 12.08?  3) Did the ALJ overly downplay the effects of plaintiff's heart condition and the side effects of plaintiff's medications? and 4) Did the ALJ improperly provide greater weight to the assessment of the "DDS" physician who had never seen the claimant and improperly discount the findings and observations of the doctor that the ALJ had sent

plaintiff to for evaluation?  We find no merit to any of these contentions, but we will address them in turn.

## I.  Mental impairment and the first ALJ's hearing

The first alleged error raised by plaintiff is whether the severity of the plaintiff's mental condition as outlined prior to the first ALJ's hearing was sufficient to render him disabled.  This issue, however, is not properly before the court.  As explained above, the initial ALJ's decision was remanded by the Appeals Council.  Then a second ALJ, Ronald Sweeda, held a hearing, examining more evidence than the first ALJ had available.  ALJ Sweeda rendered a decision denying benefits. (R. at 16-26).  This second decision is the one at issue in the present appeal and the result of the first hearing is irrelevant.  Thus, we find no merit to the plaintiff's first argument.

## II.  Plaintiff's second mental status examination and listings 12.02, 12.06 and 12.08

The plaintiff's next argument involves the ALJ's analysis of the third step of the sequential analysis.  That is, whether plaintiff's  impairments meet a "listed impairment."   A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments

presumed severe enough to preclude any gainful work." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 525 (1990).  If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to an evaluation of the plaintiff's residual functional capacity and the next step in the sequential analysis. Plaintiff bears the burden of establishing that he meets these listings.  <u>See Poulos v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 92 (3d Cir. 2007) (Claimant bears the burden of establishing steps one through four of the sequential evaluation.  Step three is whether plaintiff's impairment(s) meet a listing).

   Plaintiff asserts that he meets listings 12.02, 12.06 and 12.08, and that this conclusion is supported by a second mental status examination which occurred in March 2011.  We disagree.

   Plaintiff's brief fails to provide an in-depth analysis as to the manner in which plaintiff meets any of these listings and their very specific requirements.  With regard to this issue, plaintiff's briefs do little more than present which listings plaintiff claims should apply.  Without medical evidence and analysis explaining his position, we are required to

11

find that plaintiff has failed to meet his burden of establishing that his impairments meet a listing.

The Listings that plaintiff raises are as follows: 12.02 - "Organic Mental Disorders;" 12.06 - "Anxiety-Related Disorders" and 12.08-"Personality Disorders".  First, we note, that plaintiff fails to identify any physician who opined that  plaintiff has an impairment or combination of impairments meeting any of these listings.  In fact, the opposite is true.  A state agency mental health professional, Kowalski, examined plaintiff's limitations and concluded that they do not meet any listing.  (R. at 331-43).

Each of the listings that plaintiff claims he meets has its own particular requirements.  For example, Listing 12.02 requires that the claimant has a "specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities."  Plaintiff points to no medical witnesses who provided evidence of such an organic factor.

Listing 12.08 requires the existence of a personality disorder. Plaintiff fails to identify any evidence in the record indicating that a physician has diagnosed plaintiff with such a disorder.

Listing 12.06 relates to anxiety.  The medical records demonstrate

that plaintiff, in fact, has been diagnosed with anxiety, however, as explained more fully below, he does not meet the listing requirements for this mental disability.

All of these listings also all require that the plaintiff's mental status symptoms result in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

12.02(B); 12.06(B) and 12.08(B).

Plaintiff cites to no evidence that establishes that any two of those factors have been met.  Accordingly, plaintiff has not met any of the listings that he has raised, including 12.06, anxiety.

Plaintiff would meet listings 12.06, anxiety, and also 12.02, if he met the preliminary requirements and also had a "complete inability to function independently outside the area of [his] home."  12.02(C), and 12.06(C). Plaintiff cites to no evidence before the ALJ that indicated such a complete

13

inability to function outside of his home.  Thus, he does not meet the

listings with regard to this requirement.  Accordingly, we find no merit to the

plaintiff's argument that the ALJ erred in finding that he did not meet any

listed impairments.

### III.  Did the ALJ overly downplay the effects of plaintiff's heart condition and the side effects of his medications

The next task for the ALJ after concluding that plaintiff failed to meet

any of the listings, is to determine his residual functional capacity ("RFC"),

that is "the most [the plaintiff] can still do despite [his] limitations." 20

C.F.R. § 404.1545(a)(1).   Here, the ALJ found that the plaintiff's RFC is as

follows:

> [Plaintiff] has the residual functional capacity
> to perform light work as defined in 20 CFR
> 416.967(b) except no crawling, kneeling, or
> climbing ladders/scaffolds. [Plaintiff] must avoid
> exposure to vibration, temperature extremes, high
> humidity, wetness or pulmonary irritants.  [Plaintiff]
> could do simple repetitive tasks with low stress
> defined as having only occasional changes in work
> setting and no production rate quotas.  The
> [plaintiff] must avoid direct customer service and
> have only occasional contact with co-
> workers/supervisors in a position not requiring good
> reading/writing skills.

(R. at 20).

Plaintiff argues that the ALJ downplayed the effects of his heart condition and the side effects of his medications.  Plaintiff's brief does not fully develop this issue.  He does not explain the limiting effects of his heart condition.  He also fails to indicate what the side effects of the medication are.[6]

Further, we note that the RFC determination takes into consideration plaintiff's physical condition and provides for certain physical limits. Plaintiff suffers generally from coronary artery disease, however, he had surgery, angioplasty, and fully recovered from the surgery.  No further surgery is scheduled.  He also has a history of presenting himself at the hospital emergency room with coronary artery symptoms.  He has not made such a visit, however, since 2007.  He stopped the emergency room visits apparently because they had been due to side effects to the medicine he had been taking at the time.  (R. at 100-101).  Accordingly, as the ALJ did take plaintiff's physical limitations into consideration in his analysis, we find that plaintiff's argument is without merit.

---

[6]His brief cites to the hearing transcript where plaintiff indicates that he has no side effects from Xanax, and that his high blood pressure medicine, Lopressor makes him tired.  (R. at 110).  He also takes nitroglycerin for his heart two or three times a month (R. at 99) and baby aspirin.  (Id. at 111).   Plaintiff has cited no side effects from these two medicines.

**IV.  Did the ALJ improperly provide greater weight to the assessment of the "DDS" physician who had never seen the claimant and improperly discount the findings and observations of the doctor that the ALJ had sent plaintiff to for evaluation**

Finally, plaintiff generally attacks the ALJ's evaluation of the medical evidence.  He asserts that the ALJ improperly credited evidence that supported the denial of benefits and did not provide proper analysis to medical evidence that favored disability.  Specifically, the ALJ accorded little weight to Dr. Ciaravino's report, relied too heavily on the reports of non-examining physicians and should have given more weight to his treating physicians.  After a careful review, we disagree.

To determine whether substantial evidence supports the ALJ's decision, it is important to review the evidence that was before him. Generally, the ALJ had reports/records from several different medical experts.  Additionally, the ALJ had the plaintiff's own testimony and the testimony of a vocational expert.  We will first discuss the reports of the medical experts and then address the specific arguments plaintiff raised.

Carl T. Sebastianelli, M.A., a clinical psychologist, performed an evaluation of the plaintiff on April 13, 2006.  (R. at 324-330).  He diagnosed

16

plaintiff with attention deficit disorder of a hyperactive-impulsive type and

an adjustment disorder with mixed disturbance of emotion and conduct.

(Id. at 329).

Sebastianelli noted that plaintiff's troubles started while he was very

young and continued into his adolescence and adulthood.  (Id. at 324-26).

He found that plaintiff had good eye contact and nothing unusual in his

expressive or receptive language ability.  (Id. at 326).  He did not exhibit

any nervous mannerisms tics or tremors.  (Id.)  Plaintiff never smiled during

the one-hour evaluation, but neither did he shed any tears during the

discussions of the sad aspects of his past.  (Id.)

Sebastianelli concluded that plaintiff's prognosis for his attention-

deficit/hyperactivity disorder was poor because he had not addressed any

pharmacological or psychiatric or psychological treatment.  (Id. at 327).

Further, he concluded that plaintiff's adjustment disorder prognosis was

poor and the plaintiff's reasons for his poor judgment "certainly would

suggest continued difficulties finding and keeping employment[.]" (Id.)

Sebastianelli stated:

> The [plaintiff] would not seem to have any
> difficulty with concentration and attention to persist
> at a steady pace for household routines and tasks
> such as watching TV program[s], preparing meal[s]

17

> or remember[ing] his appointments independently. However, he would have some problems with concentration and attention and not maintain a persistent pace with work or work-like related activities where those activities would stretch into hours and therefore increased the likelihood of normal work stressors beset him, and he is likely to react with impulsivity and emotional outbursts or leave the employment situation rather than be able to cope effectively with the stressors and remain in the employment situation.

(Id. at 328).

Overall, Sebastianelli concluded that claimant would have moderate difficulty making judgments on simple work-related decisions, interacting appropriately with the public, supervisors and co-workers and responding appropriately to changes in a routine work setting.  (Id.)  He had marked restrictions in understanding and remembering detailed instructions, carrying out detailed instructions and responding appropriately to work pressures in a usual work setting.  (Id.)  His mental status, however, would cause only mild limitations regarding his ability to understand, remember and carry out short, simple instructions.  (Id.)

A state agency physician, Oliver Finch, M.D., examined plaintiff's case in March 2006 for physical limitations, and Dr. Finch completed a "Physical Residual Functional Capacity Assessment."  Dr. Finch indicated

some exertional limitations in lifting and standing/sitting.  (Id. at 300).

However, he found no limitations in manipulation, vision, communication,

or environment.  (Id. at 301-02).  Thus, Dr. Finch does not indicate that

plaintiff is disabled from working.

Joseph J. Kowalski, M.D., a psychiatrist, completed a "Psychiatric

Review Technique" regarding the plaintiff in May 2006.  (Id. at 331-344).

Dr. Kowalski reviewed plaintiff's case in light of listings 12.02 through

12.10.  (Id.)  He found a medically determinable impairment, that is, anxiety

disorder under listing 12.06.  (Id. at 336).  But he concluded that plaintiff

did not meet the requirements of this listing.  Dr. Kowalski stated:

"Claimant alleges anxiety.  He is taking Xanax for this which is prescribed

by his [primary care physician].  He is not receiving any psychiatric

treatment.  His [anxiety] can be affected by his physical problems.  Based

on the evidence of record, the claimant's statements are found to be

partially credible."  (Id. at 343).  He further indicated that plaintiff suffered

from adjustment disorder with mixed disturbance of emotion and conduct

with mild to moderate limitations.  (Id.)

Another psychologist, Elizabeth Ciaravino, Ph.D, performed a clinical

psychological evaluation on March 6, 2011.  (Id. at 526-32).  At the time,

19

plaintiff was thirty-eight years old and living with his mother. (Id. at 526).

She noted that plaintiff had an apparent history of attention deficit disorder,

adjustment disorder with mixed disturbance of emotions and conduct, and

panic attacks, as well as blocked arteries. (Id.) Since the age of three

plaintiff had been placed in various foster homes and treatment centers

because his mother had been unable to care for him and his brother. (Id.)

Plaintiff indicated to Dr. Ciaravino that he had difficulty focusing

throughout his life and could never work adequately at various assembly

line type jobs because he could not work quickly enough. (Id. at 527). His

self-esteem in the sense of being a productive individual had been

hampered by the numerous placements he had been in. (Id.) Medically, at

the time, he was also being evaluated for a heart problem and sleep

apnea. (Id.)

Plaintiff informed Dr. Ciaravino that his days and nights are often

mixed up. He watches television, generally cartoons, and has few friends.

(Id.) He takes Lopressor for high blood pressure and Xanax for anxiety

and he has previously taken Plavix, a medicine used to prevent blood clots.

(Id.) Ciaravino indicated that he presented as someone extremely

depressed. (Id. at 528).

Dr. Ciaravino's diagnostic impression states that plaintiff has a history of bipolar disorder, adjustment disorder with disturbance of emotions and conduct, panic disorder and attention deficit hyperactivity disorder.  (Id.)  She placed his Global Assessment of Functioning Score ("GAF") at 55.[7]

Dr. Ciaravino completed a check-off type form entitled: "Medical Source Statement of Ability To Do  Work-Related Activities (Mental)."  On this form she indicated that plaintiff would have marked difficulty in: understanding and remembering detailed instructions; carrying out detailed instructions; and making judgments on simple work-related decisions.  (Id. at 531).  She noted that plaintiff had "poor concentration and limited self confidence."  (Id.)  She also indicated marked restrictions in: interacting appropriately with co-workers; responding appropriately to work pressures and responding appropriately to changes in routine and work setting.  She noted that plaintiff tends to be avoidant.  (Id.)

---

[7]The GAF rating indicates an individual's overall level of functioning at the time of the examination.  The GAF scale is broken down into ten ranges.  A GAF score in the 51 to 60 range, like plaintiff's, indicates functioning with moderate symptoms (e.g. flat affect or occasional panic attacks) or moderate difficulty in social or occupational functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., text rev., Am. Psychiatric Ass'n 2000).

Plaintiff's treating physician is Cynthia Oleski, M.D.  Plaintiff had evidently only seen Oleski twice prior to the ALJ's hearing and the medical records from her are not overly elucidating in determining whether the plaintiff is entitled to benefits.  (Id. at 93).  She diagnosed him with arteriorscierotic cardiovascular disease, benign hypertension, hyperlipidemia and panic disorder without agoraphobia with severe panic attacks and lumbago.  (Id. at 506, 550).  The records indicate that Dr. Oleski directed plaintiff to physical therapy for lumbago, that is lower back pain.  (Id. at 550).

Based upon this evidence, the plaintiff's testimony and the testimony of the Vocational Expert, the ALJ concluded that plaintiff is not disabled. The ALJ provided little weight to the Dr. Ciaravino's "Medical Source Statement" because she is not a treating source and relied solely on one observation of the plaintiff and not long-term observations and experiences with him.  (Id. at 22).  Additionally, Ciaravino's conclusions were inconsistent with regard to the severity of plaintiff's mental impairments. For example, she indicated that plaintiff had marked restrictions on twice as many work-related mental activities as Dr. Sebastianelli did.  (Cf. id. at 531; id. at 329).  She also indicated that plaintiff suffered from bi-polar

disorder which evidently was not a principal diagnosis of any of the other medical experts.   We find it appropriate, therefore, for the ALJ to provide little weight to this opinion.

Plaintiff argues that the ALJ should have afforded this statement more weight because it was similar to the report of Dr. Sebastianelli and the findings of treating doctor Cynthia Oleski.  Additionally, according to the plaintiff, her report is supported by the medicine he was prescribed, including Xanax, and his work history.  As noted, however, Dr. Ciaravino found plaintiff markedly limited in twice as many work related mental activities as Dr. Sebastianelli found.  Additionally, the findings of Dr. Oleski do not support Ciaravino's findings.  For example, Oleski found plaintiff suffered from anxiety and  panic disorder.  The records do not indicate that she found him to be bi-polar.   Ciaravino, however, indicates that he suffers from bi-polar disorder.  Moreover, Ciaravino found plaintiff to be extremely depressed, a finding not supported by any of the other medical professionals.  Thus, while Dr. Oleski's records do not contradict Ciaravino's report, they do not support it either as plaintiff suggests.  We find, therefore, that is was appropriate for the ALJ to provide little weight to Dr. Ciaravino's report.

Next, plaintiff attacks the reports of the non-examining physicians.

Plaintiff states:  "It is also important to note that the evaluation of the

[Disability Determination Services] DDS physician that is referred to by ALJ

Sweeda was done without ever seeing Mr. Golzak and without the benefit

of reviewing either examinations of Carl Sebastianelli, M.S. or Dr.

Ciaravino.  As such, it cannot be considered to constitute substantial

evidence."  (Doc. 5, Pl's. Brief at 9).  For this proposition, plaintiff cites to

Evosevich v. Consol. Coal Co., 789 F.2d 1021 (3d Cir. 1986).   Plaintiff's

argument is unconvincing.

Specifically with regard to the DDS physicians, the ALJ stated:

> The undersigned Administrative Law Judge also
> considered the assessments made by physicians
> with the Disability Determination Services (SSR 96-
> 6p).  These consultants concluded that the claimant
> did not have a severe mental impairment and based
> on his physical condition retained the functional
> capacity to perform the physical demands of a full
> range of light work (Exhibits 10F and 13F).  This
> evidence was given the weight generally afforded to
> opinions of non-treating, non-examining doctors.
> Although the undersigned finds that the claimant
> had severe mental impairments and limit him to
> light work with restrictions, the DDS assessment
> can be read that the claimant had the functional
> capacity to perform some type of work activity.

(R. at 23).

The ALJ refers to the assessments made by two different medical

professionals, Oliver Finch, M.D., who performed a physical residual

functional capacity assessment in March 2006, and Joseph Kowalski, M.D.

who performed a psychiatric review in May 2006. (R. at 299-304 & 331-

344).

Первый First, we note that it is unclear which doctor plaintiff refers to when

he complains of the "DDS physician."[8]  We will thus assume he refers to

both of them.  He first complains that they did not review the examination

made by Sebastianelli or Ciaravino.  Evidently, this position is correct with

regard to Dr. Finch, but Dr. Kowalski does refer to the examination of Dr.

Sebastianelli.  (R. at 343).  Ciaravino performed her examination well after

Finch and Kowalski completed their reviews so it is safe to assume that

neither reviewed her examination.  The doctors, however, reviewed the

records available at the time that they made their reports.  Plaintiff has

provided no convincing arguments as to the manner in which Ciaravino's

report or Sebastianelli's report would have changed or conflicted with their

conclusions.[9]  Moreover, the ALJ is the one to ultimately make the RFC

---

[8]In his opening brief plaintiff only refers to the "DDS physician"
without mentioning by name which one he referred to. (Doc. 5, at 8-9).  In
his reply brief, however, he specifically names Dr. Kowalski.  (Doc. 7, at 2).

[9]It could be argued that Ciaravino's report conflicts with the mental
evaluation performed by Dr. Kowalski.  But as set forth above, the ALJ

decision, and he had the benefit of all the records.

Plaintiff asserts that the reports of the non-examining physicians cannot be considered "substantial evidence."  Importantly, these records are not the sole evidence that the ALJ relied upon.  They are merely a portion of the evidence in the record that he examined which we look at as a whole to determine whether substantial evidence exists to support his position.  Indeed, upon review of all the evidence, the ALJ found plaintiff more limited than Dr. Kowalski suggested.

Further, as noted above, plaintiff relies on Evosevich, supra.  Such reliance is unavailing to plaintiff's position.  It appears that plaintiff seeks to rely upon this case for the proposition that the report of a non-examining physician cannot be considered substantial evidence in a Social Security appeal if the non-examining physician performed a review without the benefit of the reports of examining physicians.  This is not a holding of Evosevich.

Evosevich does not involve Social Security benefits.  It is a case about black lung benefits.  In its analysis, however, it does include a discussion of the standard for evaluating evidence in Social Security

_____

properly provided little weight to Ciaravino's report.

26

appeals.   The case discusses the weight to be provided to the opinion of a non-examining physician.  The court explained "that while the fact that the experts have neither examined nor testified lessens the probative power of their reports, various factors may militate in favor of according their reports some evidentiary value."  Evosevich, 789 F.2d 1027 (internal quotation marks and citations omitted).

Such factors may include whether the experts received extensive documentation, whether they are highly qualified and whether "they reviewed the record, and they confined themselves to expressing an opinion on the basis of the clinical reports before them."  Id.  Ultimately, the court held "that the opinion of a non-examining physician in a black lung case may in some circumstances have probative worth supporting substantial evidence."  Id. at 1028.   Thus, if you apply that holding to the instant case, the opinion of a non-examining physician can in some circumstances have probative worth supporting substantial evidence.

In this case, we find that the ALJ provided appropriate weight to the opinions.  The two non-examining physicians are experts in evaluating disability claims, and they examined the plaintiff's medical records.  See 20 C.F.R. § § 404.1527(e)(2)(I), 416.927(f)(2)(I) (indicating that state agency

physicians are highly qualified and experts in Social Security disability

evaluation).[10]

_____

[10]Specifically, the law provides that the ALJ is to treat such opinions
as follows:

> (2) Administrative law judges are responsible
> for reviewing the evidence and making findings of
> fact and conclusions of law. They will consider
> opinions of State agency medical or psychological
> consultants, other program physicians and
> psychologists, and medical experts as follows:

> (i) Administrative law judges are not bound by any
> findings made by State agency medical or
> psychological consultants, or other program
> physicians or psychologists. State agency medical
> and psychological consultants and other program
> physicians, psychologists, and other medical
> specialists are highly qualified physicians,
> psychologists, and other medical specialists who
> are also experts in Social Security disability
> evaluation. Therefore, administrative law judges
> must consider findings and other opinions of State
> agency medical and psychological consultants and
> other program physicians, psychologists, and other
> medical specialists as opinion evidence, except for
> the ultimate determination about whether you are
> disabled (see § 404.1512(b)(8)).

> (ii) When an administrative law judge considers
> findings of a State agency medical or psychological
> consultant or other program physician,
> psychologist, or other medical specialist, the
> administrative law judge will evaluate the findings

The ALJ appropriately considered the reports and the plaintiff has made no

convincing argument to indicate that he did not.  Even though Kowalski did

not examine the entire record, the ALJ did.  The Third Circuit Court of

Appeals has acknowledged "because state agency review precedes the

ALJ review, there is always some time lapse between the consultant's

report and the ALJ hearing and decision."  Chandler v. Comm'r of Soc.

Sec., 667 F.3d 356, 361 (3d Cir. 2011).  And hence, it is not unexpected

that the ALJ may have more evidence to review than the state agency did.

 Moreover, as state agents, Dr. Kowalski's opinion and Dr. Finch's opinion

---

> using the relevant factors in paragraphs (a) through
> (d) of this section, such as the consultant's medical
> specialty and expertise in our rules, the supporting
> evidence in the case record, supporting
> explanations the medical or psychological
> consultant provides, and any other factors relevant
> to the weighing of the opinions. Unless a treating
> source's opinion is given controlling weight, the
> administrative law judge must explain in the
> decision the weight given to the opinions of a State
> agency medical or psychological consultant or other
> program physician, psychologist, or other medical
> specialist, as the administrative law judge must do
> for any opinions from treating sources, nontreating
> sources, and other nonexamining sources who do
> not work for us.

20 C.F.R. § 404.1527(e)(2).

"merit significant consideration[.]"  Id.  Because such consultants are

experts in the Social Security disability programs, the regulations require

ALJs to consider "their findings of fact about the nature and severity of an

individual's impairment(s) . . .."  Id. (quoting SSR 96-6p.)   The law provides

that state agency consultants are "highly qualified physicians,

psychologists and other medical specialists who are also experts in Social

Security disability evaluation.  Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants,

and other medical specialists as opinion evidence, except for the ultimate

determination about whether [a claimant is] disabled."  20 C.F.R. §

404.1527(e)(2)(I).  Accordingly, we will deny this portion of the plaintiff's

appeal.

The plaintiff next argues that "[t]he reports and opinions of treating

doctors are to be accorded more weight than those of non-treating

physicians."  (Doc. 5, Pl's. Brief at 9).  While this may be a correct

statement of the law, the plaintiff does not explain its application to the

instant case.  The administrative record contains records of Plaintiff's two

visits to his treating physician.  Plaintiff does not argue that these records

indicate that his treating physician opines that he is disabled.  In fact, the

treating physician does not indicate that plaintiff is disabled from work. Plaintiff argues that "the last treating doctor has confirmed the long standing diagnosis of Mr. Golzak and her opinion is amply supported by the findings on examination of two psychological consultants and is reflected in the record as a whole." (Id. at 10).  Regardless, it's true as set forth above that Oleski confirms plaintiff's diagnosis, however, she does not indicate that he cannot or should not engage in employment.  In fact, the lack of significant records from the treating physician makes reliance on the reports of the examining doctors and non-examining doctors all the more important for the ALJ's analysis.

Based upon his review of all of this evidence, the ALJ determined that the plaintiff's residual functional capacity is as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no crawling, kneeling, or climbing ladders/scaffolds. [Plaintiff] must avoid exposure to vibration, temperature extremes, high humidity, wetness or pulmonary irritants. [Plaintiff] could do simple repetitive tasks with low stress defined as having only occasional changes in work setting and no production rate quotas.  The [plaintiff] must avoid direct customer service and have only occasional contact with co-workers/supervisors in a position not requiring good reading/writing skills.

(R. at 20).  The ALJ asked the impartial vocational expert (hereinafter "VE")

31

who testified at the hearing, Fran Terry, whether jobs existed in the

national economy for an individual with the claimant's age, education, work

experience, and residual functional capacity.  (Id. at 25).  The VE indicated

that given the claimant's age, education, work experience, and residual

functional capacity, he could perform representative occupations such as

cafeteria attendant, office cleaner and courier. (Id. at 118-19). The

numbers of jobs existing in the region for such occupations are 600; 1,300;

and 170 respectively. (Id.)

Based upon the medical records and the treatment history of the

plaintiff, substantial evidence supports this decision.  With regard to

treatment of his disorders, plaintiff evidently went through all the treatment

and follow-up treatment for his coronary and artery problems.  The last

time he went to the hospital regarding this issue was in 2007.[11]  Plaintiff

was diagnosed with lumbago (i.e. lower back pain) by his treating

physician.  He started physical therapy for it, but was discharged for failing

to comply.  Finally, for his mental disorders, plaintiff evidently received

some medicine from friends and a Xanax prescription from his treating

---

[11]Plaintiff's reply brief indicates that "he has had repeated episodes of
emergency room care."  (Pl. Reply Brief at 2).  This may be true, however,
his last visit to the emergency room was in 2007, six to seven years ago.

physician.[12]  He first got the prescription filled a week before his second

hearing before the ALJ.  (R. at 113).  He has required no counseling for

any mental problems, and he has sought none.  (Id. at 100). Thus, as the

ALJ pointed out, plaintiff has required little treatment.

Plaintiff claims that Sebastianelli's consultative psychological

evaluation is sufficient to find him disabled.  Plaintiff's argument, however,

misses the point.  The court's sole task at this stage is to determine

whether substantial evidence supports the ALJ's decision, not whether we

would make a different decision or whether the evidence would support a

different decision.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

We "are not permitted to re-weigh evidence or impose [our] own factual

determinations."  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d

Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Moreover, Sebastianelli's report does not conclude that plaintiff

cannot work or is permanently disabled.  It notes that he has marked

limitations in certain areas including remembering and carrying out detailed

instructions and responding appropriately to work pressures.  (R. at 329).

---

[12]The record is not clear the manner in which plaintiff received
medicine from his friends.  Plaintiff's testimony regarding such medication
without a prescription from a doctor provides little weight to plaintiff's claim.

33

The ALJ took these limitations into consideration in determining the plaintiff's RFC and in putting a hypothetical question to the impartial vocational expert.[13]  Thus, we find plaintiff's attack on the ALJ's treatment of Sebastianelli's report to be without merit.

Although not explicitly set out in the brief as such it appears that the plaintiff generally argues that the ALJ made an improper RFC determination.  This improper RFC determination is based upon the ALJ providing inappropriate weight to the various medical evidence and reports. As set forth above, we disagree.  The ALJ made a decision that is supported by substantial evidence.  It is not our task to say whether we agree with that decision or whether we would have come to a different conclusion. See Rutherford, 399 F.3d 552 (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact finder.)   Substantial evidence does support the ALJ's finding, and therefore, plaintiff's argument lacks merit.

## Conclusion

For the reasons set forth above, we will deny the plaintiff's appeal.

──────────────────

[13]In examining the VE, the ALJ limited the jobs available in his hypothetical to simple, repetitive tasks, low stress, only occasional changes in the work setting, no production rate quotas and limited public interaction, that is no customer service.

34

We find that while it is undeniable that plaintiff has had an unsettled life

and certain physical and psychological maladies, substantial evidence

supports the ALJ's denial of SSI benefits.  The ALJ took into consideration

plaintiff's limitations when determining the plaintiff's residual functional

capacity.  He provided appropriate weight to the reports and records of the

various medical experts.  Accordingly, plaintiff's appeal will be denied.  An

appropriate order follows.

**Date: March 13, 2014**               <u>s/ James M. Munley</u>

                                 **Judge James M. Munley**
                                 **UNITED STATES DISTRICT COURT**